UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| R.M., | Case No. 22-cv-02969 (JRT/ECW) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Kilolo Kijakazi, Acting Commissioner of Social Security, | |
| Defendant. | |

This matter is before the Court on Plaintiff R.M.'s ("Plaintiff") Motion for Summary Judgment (Dkt. 14) and Defendant Kilolo Kijakazi, Acting Commissioner of Social Security's ("Defendant" or "the Commissioner") Motion for Summary Judgment (Dkt. 17). Plaintiff filed this case seeking judicial review of a final decision by Defendant denying his application for disability insurance benefits. (*See* Dkt. 1.) This case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons stated below, the Court recommends that Plaintiff's Motion be denied, and that Defendant's Motion be granted.

    **I.**    **FACTUAL AND PROCEDURAL BACKGROUND**[1]

On December 17, 2019, Plaintiff filed an application for Disability Insurance Benefits under Title II of the Social Security Act, alleging disability as of November 1,

---

[1] The Court has reviewed the entire administrative record, giving particular attention to the facts and records cited by the parties. The Court will recount the facts of

2019, due to arthritis in the back and neck; problems with his hips, wrists, and right arm; depression; and anxiety. (R. 267-68, 317.)[2]  In his disability report, Plaintiff asserted that he could not speak or understand English, and that his preferred language was Spanish. (R. 316.)  He then represented that he read and understood English, and could write more than his name in English. (R. 316.)  It was also noted that Plaintiff's first language was Arabic and that he needed an Arabic translator. (R. 323.)  Plaintiff had "a reasonable command of English," but needed some help with translation from his wife. (*See, e.g.*, R. 540.)

Plaintiff represented that he had completed two years of college when asked his highest level of completed education. (R. 318.)  At the hearing, Plaintiff stated that went to a technological institute for two years, which is a study program before starting college, but had not gone to college. (R. 69.)

Plaintiff's previous job prior to his alleged disability, from December 2017 through November 2019, was personal healthcare attendant. (R. 318-19.)

Plaintiff's claim was initially denied on April 14, 2020, and again denied on June 24, 2020 upon reconsideration. (R. 90-100, 105-14.)  On August 5, 2020, Plaintiff filed a written request for a hearing before an administrative law judge. (R. 129-30.)  Plaintiff appeared via telephone with legal counsel and a translator and testified at a hearing on October 15, 2021 before Administrative Law Judge ("ALJ") Jessica Hodgson. (R. 33-

---

record only to the extent they are helpful for context or necessary for resolution of the specific issues presented in the parties' motions.

[2]    The Administrative Record ("R.") can be found at Docket Entry No. 13.

84.) At the hearing, Plaintiff's counsel represented as follows when asked by the ALJ if his client needed an interpreter for the hearing:

> His wife is of the opinion he will need the interpreter most of the hearing. However, some of the notes talk about him conversing with his doctors. Why don't we start out and if he needs some help with complex words we can help him out but I don't think starting out we would need verbatim translation.

(R. 35.) Ultimately, Plaintiff asked that the entire proceedings be translated. (R. 36.)

In a decision dated December 15, 2021, the ALJ concluded that Plaintiff was not disabled. (R. 9-27.) Plaintiff filed a request for review of the hearing decision and on September 29, 2022, the ALJ's decision became the final decision of the Commissioner when Plaintiff's appeal was denied by the Appeals Council. (R. 1-6.)

Following the five-step sequential evaluation process under 20 C.F.R. § 404.1520(a),[3] the ALJ first determined at step one that Plaintiff had not engaged in substantial gainful activity during the period from the alleged onset date of November 1,

---

3   The Eighth Circuit described this five-step process as follows:

> The Commissioner of Social Security must evaluate: (1) whether the claimant is presently engaged in a substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations; (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

*Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

2019, and met the insured status requirements of the Social Security Act through December 31, 2025. (R. 14.)

At step two, the ALJ determined that Plaintiff had the following severe impairments: mid-level degenerative cervical spondylosis, marked at C5/6 and C6/7, bulging cervical discs, varying degree spinal canal and/or foraminal compromise, ventral hernia, mild scattered degenerative arthritis (wrists), ulnocarpal abutment syndrome status post arthroscopic surgical wafer resection and debridement, and superior labrum tear from anterior to posterior (SLAP IV) extending into biceps tendon. (R. 14-15.)

At the third step, the ALJ determined that Plaintiff did not have an impairment that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1. (R. 15-17.)

At step four, after reviewing the entire record, the ALJ concluded that Plaintiff had the following residual functional capacity ("RFC"):

> [T]o perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can frequently operate hands controls bilaterally, the claimant can frequently reach overhead bilaterally, the claimant can frequently reach in all directions, the claimant can frequently handle, finger, and feel bilaterally, the claimant can frequently climb ramps and stairs, the claimant can occasionally climb ladders, ropes, and scaffolds, the claimant can frequently balance, stoop, kneel, and crouch, the claimant can occasionally crawl, the claimant can occasionally work at unprotected heights, moving mechanical parts, and in vibration, and the claimant can perform simple routine tasks.

(R. 17.)

At step five, the ALJ concluded, based on the above RFC and the testimony of the vocational expert ("VE"), that given Plaintiff's age, education (high school education), work experience, and RFC, there were other jobs that exist in significant numbers in the

national economy that he could perform, including work as a: Lens Inserter, Dictionary of Occupational Titles ("DOT") No. 713.687-026, which is considered sedentary, unskilled work (Specific Vocational Preparation ("SVP") 2); Final Assembler, DOT No. 713.687-018, which is considered sedentary, unskilled work (SVP 2); and Table Worker, DOT No. 739.687-0182, which is considered sedentary, unskilled work (SVP 2). (R. 25-26.) Outside of Plaintiff's education level, there was no mention of Plaintiff's ability, or lack thereof, to understand English in the hypothetical provided to the VE. (R. 69-85.)

Accordingly, the ALJ deemed Plaintiff not disabled. (R. 26-27.)

Plaintiff requested review of the ALJ's decision. The Appeals Council denied Plaintiff's request for review, which made the ALJ's decision the final decision of the Commissioner. (R. 1-6.)

Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g). (Dkt. 1.)

## II.   LEGAL STANDARD

Judicial review of an ALJ's denial of benefits is limited to determining whether substantial evidence on the record as a whole supports the decision, 42 U.S.C. § 405(g); *Chismarich v. Berryhill*, 888 F.3d 978, 979 (8th Cir. 2018), or whether the ALJ's decision results from an error in law, *Nash v. Comm'r, Soc. Sec. Admin.* 907 F.3d 1086, 1089 (8th Cir. 2018). As defined by the Supreme Court:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . is more than a mere scintilla. It means—

and means only—such relevant evidence as a reasonable mind might accept
as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

"[T]his court considers evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Nash*, 907 F.3d at 1089 (marks and citation omitted). "If substantial evidence supports the Commissioner's conclusions, this court does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome." *Id.* "In other words, if it is possible to reach two inconsistent positions from the evidence, and one of those positions is that of the [ALJ], the Court must affirm the decision." *Jacob R. v. Saul*, No. 19-CV-2298 (HB), 2020 WL 5642489, at *3 (D. Minn. Sept. 22, 2020) (citing *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992)).

### III.   DISCUSSION

Plaintiff makes a single argument with respect to his request for reversal and an award of benefits, or remand in the alternative.[4] Specifically, Plaintiff argues that the ALJ erred by failing to include a limitation regarding his limited ability to speak English in the RFC, did not include the limitation in the hypothetical to the VE, and therefore the Commissioner did not meet her burden at step five to identify jobs that Plaintiff would be

---

[4] The Court notes that the Eighth Circuit has concluded that a Social Security disability claimant's failure to raise a disability claim to an ALJ "waived [the claim] from being raised on appeal." *Anderson v. Barnhart*, 344 F.3d 809, 814 (8th Cir. 2003) (citation omitted) ("Anderson never alleged any limitation in function as a result of his obesity in his application for benefits or during the hearing. Accordingly, this claim was waived from being raised on appeal.").

6

able to perform within an accurately determined RFC. (Dkt. 15 at 8-11.) In the same vein, Plaintiff argues that there is a conflict between an RFC missing a language limitation, and the language requirement subsumed within the DOT for the positions identified by the VE in response to the hypothetical from the ALJ. (*Id.* at 12-13.) The Government counters that Plaintiff's arguments have been rendered meritless by the fact that the ALJ was not required to include a language limitation in the RFC, as the Social Security Administration ("SSA") has previously eliminated a claimant's proficiency in English from consideration:

> Contrary to Plaintiff's argument, the ALJ was not required to include a limitation in the RFC that he had limited English speaking ability. Pl's Br. at 8-11. RFC is the most a claimant can do despite physical and mental limitations caused by his medically determinable impairments. 20 C.F.R. § 404.1545(a). Plaintiff has made no showing that his limited English speaking is related to a medically determinable impairment. Thus, the ALJ was not required, and indeed it would have been inappropriate, to include a limitation regarding Plaintiff's ability to speak English in the RFC.
>
> In the past, the agency considered a claimant's inability to communicate in English as an educational category at step five of the sequential evaluation process. However, effective April 27, 2020, the agency eliminated the educational category "inability to communicate in English." 85 Fed. Reg. 10586. "When determining the appropriate education category, [the agency] will not consider whether an individual attained his or her education in another country or whether the individual lacks English language proficiency." Social Security Ruling (SSR) 20-1p. Furthermore, "Neither the country in which an individual was educated nor the language an individual speaks informs us about whether the individual's reasoning, arithmetic, and language abilities are commensurate with his or her formal education level." SSR 20-1p.
>
> In making this change, the agency recognized that an inability to communicate in English is no longer a useful indicator of the vocational impact of an individual's education because of changes in the national workforce. *See* 85 Fed. Reg. 10586. In fact, the record in this case supports that conclusion. Since moving to the United States, Plaintiff held several jobs

> including as an in-home caregiver to ill people and working as a trainer with the military (Tr. 43-44, 47). While his earnings were not high, he had consistent earnings allowing him to be covered for Title II disability benefits through December 2025 (Tr. 14, 276).
>
> Ultimately, the ALJ determined Plaintiff had at least a high school education (Tr. 25). This finding is consistent with Plaintiff's testimony that he attended a technology institute in his home country (Tr. 69). Additionally, in conjunction with his application for disability benefits, Plaintiff reported he had two years of college (Tr. 318). The ALJ's finding that Plaintiff had at least a high school education is supported by substantial evidence, and his ability to communicate in English was not relevant to the disability determination.

(Dkt. 18 at 7-8 (footnote omitted).) In addition, Defendant argues that because the RFC did not need to consider Plaintiff's ability to understand English in the hypothetical to the VE, any purported inconsistency with the DOT is of no avail. (*Id.* at 9.) In any event, Defendant takes the position that the DOT does not specify that the reading, speaking, or writing requirements must be done in English.[5] (*Id.*)

As stated previously, an ALJ is required to use the five-step sequential evaluation process under 20 C.F.R. § 404.1520 to determine whether Plaintiff is disabled for the purposes of Title II benefits. The fifth step in this analysis is as follows:

> At the fifth and last step, we consider our assessment of your residual functional capacity and your age, **education**, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520(a)(4)(v) (emphasis added).

---

[5] Plaintiff did not file a reply.

Regulation 20 C.F.R. § 404.1564, addressing education as a vocational factor, was amended on February 25, 2020, with an effective date of April 27, 2020.[6] *See Removing Inability to Communicate in English As An Education Category*, 85 Fed. Reg. 10586-01, 2020 WL 885690 (Feb. 25, 2020).  Prior to April 27, 2020, the SSA considered a claimant's inability to communicate in English when assessing a claimant's education level.  *See* 85 Fed. Reg. 10586-10587 (Feb. 25, 2020).  In amending this regulation, the SSA emphasized the "inability to communicate in English" was "no longer a useful indicator of an individual's educational attainment or of the vocational impact of an individual's education" because of changes in the national workforce since the SSA adopted the rule 40 years ago.  85 Fed. Reg. 10586-01, 10595, 2020 WL 885690.

Under the revised regulation, the SSA "will not consider whether an individual attained his or her education in another country or whether the individual lacks English proficiency."  SSR 20-1p, 2020 WL 1083309 (Mar. 9, 2020).  "When finalizing the regulation amendment, the [SSA] explained that changes in the national economy indicate that employment rates for people with limited English proficiency have

---

[6]  With respect to the effective date of the amendment, the SSA provided that it "will apply the final rule to new applications filed on or after the effective date, and to claims that are pending on and after the effective date."  85 Fed. Reg. 10586-01, n.95 (SSA, Feb. 25, 2020), 2020 WL 885690.  Courts have determined that if the final decision by the ALJ occurred after April 27, 2020, then the amended version 20 C.F.R. § 404.1564 applies.  *See Vang v. Comm'r of Soc. Sec.*, No. 1:21-CV-00488-SAB, 2022 WL 17812859, at *6 (E.D. Cal. Dec. 19, 2022) ("The ALJ rendered a decision on August 10, 2020, more than three months after the effective date of the amendment.  Thus, the amendment is applicable to this instant case.").  Here, the ALJ's and Appeal Council's decisions both occurred after April 2020, and therefore the amended version of 20 C.F.R. § 404.1564 applies to this case.

increased since 1980, which suggests that English proficiency is no longer a useful category describing a claimant's 'educational attainment or of the vocational impact of an individual's education for the purposes of our programs,' as it was in 1978, when the former regulation was written." *Salimeh N. v. Comm'r of Soc. Sec.*, No. C21-1523 (SKV), 2022 WL 1963719, at *4 (W.D. Wash. June 6, 2022) (quoting 85 Fed. Reg. 10586-01, 10587, 2020 WL 885690 (Feb. 25, 2020)).

Moreover, the SSA rejected the rationale by a commenter that because the DOT has a language component in their job descriptions, the ability to communicate in English must be a relevant vocational factor, noting that the DOT itself underscores that the ability to communicate in English is not an influencing factor as a matter of general principle.  85 Fed. Reg. 10586-01, 10591; *see also Pichardo v. Comm'r of Soc. Sec.*, No. 21-CV-06873 (SDA), 2023 WL 2596970, at *20 (S.D.N.Y. Mar. 22, 2023) (citations omitted); *Salimeh N.*, 2022 WL 1963719, at *4.

Because a lack of English language proficiency is no longer a factor that the SSA must consider when determining a claimant's disability eligibility, Plaintiff's argument that the RFC was incomplete because it failed to include such a limitation or because the ALJ failed to consider the same with respect to step 5, including any consideration of the DOT, is without merit.  *See Bilotta v. Saul*, 850 F. App'x 162, 167 n. 7 (4th Cir. 2021); *Vang*, 2022 WL 17812859, at *6 ("As an initial matter, as correctly noted by Defendant, the regulation concerning education has been amended to eliminate any reference to the ability to speak, read and understand English.") (citation omitted).  The Court therefore

recommends denying Plaintiff's motion for summary judgment and granting the Commissioner's motion for summary judgment.

## IV. RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Plaintiff R.M.'s Motion for Summary Judgment (Dkt. 14) be **DENIED**; and

2. Defendant's Motion for Summary Judgment (Dkt. 17) be **GRANTED**.

DATED: August 25, 2023                         *s/Elizabeth Cowan Wright*
                                               ELIZABETH COWAN WRIGHT
                                               United States Magistrate Judge

## NOTICE

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under District of Minnesota Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in D. Minn. LR 72.2(c).